## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WAUSAU BUSINESS INSURANCE COMPANY, a Wisconsin corporation, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:07-cv- 03732 |
| v. | ) | |
| | ) | Honorable Mark Filip |
| FISHER PRINTING CO., INC. an Illinois corporation, | ) ) | Magistrate Judge Valdez |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT AND COUNTER-PLAINTIFF FISHER PRINTING CO., INC.

### I.    INTRODUCTION

Fisher Printing's Motion for Summary Judgment in this action is supported not only by this Memorandum in Support but by its Statement of Material Facts as to Which There is no Genuine Issue, in Support of Motion for Summary Judgment of Defendant and Counter-Plaintiff Fisher Printing Co., Inc. (hereinafter called the "SOF;" references to the SOF herein denoted "SOF par.__."). The SOF, in turn, incorporates by reference the Affidavit of Robert B. Baker ("Baker Affidavit"), and four exhibits thereto.

### II.    SUMMARY OF PERTINENT FACTS

Ashley Furniture, Inc. and Ashley HomeStores Ltd. ("Ashley") filed the *Ashley* Complaint against Fisher Printing to redress alleged copyright and trademark infringements on the part of Fisher Printing. According to the *Ashley* Complaint, by way of background, in 2006 Fisher Printing approached certain independent owners/operators of Ashley HomeStores retail locations and sought those retailers' printing business. In so doing, Fisher Printing "mocked up" some sample sales circulars for the retailers (which

included using Ashley's logo), presumably to demonstrate Fisher Printing's printing capabilities. Ashley Furniture, Inc. (which is distinct from the retailers) complained about this practice in several pieces of correspondence to Fisher Printing in 2006, claiming that certain Ashley marks used in these circulars were trademarked and could not be used by Fisher Printing. *See* SOF par. 6; *See also* the *Ashley* Complaint itself, which is Exhibit B to Wausau Complaint (Baker Affidavit, Exhibit 1), at paragraphs 8 through 22.

In e-mail correspondence between Ashley and Fisher Printing in 2006 (incorporated by reference into the *Ashley* Complaint), Ashley Furniture noted that Fisher Printing was presenting "mocked up" sample circulars to Ashley HomeStores retailers, and requested that Fisher Printing provide it with a signed Logo Usage Agreement. Chris Fischer of Fisher Printing responded that "if you will forward a Logo Usage Agreement we will review, sign and provide back to you for your files." Mr. Fisher further noted that Fisher Printing had been "asked to provide design and printing services by . . . independently owned and operated Ashley Furniture Home Stores," and that "I'm sure you are aware that not all of the Ashley Furniture Home Stores are placing print orders from your [Ashley Furniture's] program, many have secured sources out side of the program and are negotiating independently." *See* SOF par. 32-33; *See also* Exhibit B to Wausau Complaint (Baker Affidavit, Exhibit 1), paragraphs 15-15 and Exhibits A and B thereto.

With that as background, the gravamen of the *Ashley* Lawsuit is that, in March, 2007, Fisher Printing placed an advertisement for its printing services in an issue of a trade publication called *Home Furnishings Retailer*. This advertisement asked potential

users of Fisher Printing's printing services: "Who are you buying your AFHS insert from?" and also advertised a "Win Win Insert Program." The *Ashley* Complaint calls this advertisement "Defendant's 2007 Advertisement." *See* SOF par. 14. According to the *Ashley* Complaint, Defendant's 2007 Advertisement also included a "Mocked Up Sales Circular." (SOF par. 15.) This Mocked Up Sales Circular, in turn, used and displayed the marks ASHLEY, ASHLEY FURNITURE HOMESTORE, IN STYLE. IN REACH and DURAPELLA (*See* SOF par. 16), incorporated a copyrighted image of Ashley HomeStores' Masthead (*See* SOF par. 17) and likewise incorporated copyrighted images of Ashley Furniture's products (*See* SOF par. 18).

Additionally, the *Ashley* Complaint asserts that Fisher Printing attached certain advertising circulars to a March 18, 2007 solicitation letter, which, again, displayed the marks ASHLEY, ASHLEY FURNITURE HOMESTORE and IN STYLE. IN REACH (SOF par. 19) The *Ashley* Complaint refers to these as "Defendant's 2007 Circulars." Once again, asserts the *Ashley* Complaint, Defendant's 2007 Circulars included and used copyrighted images of Ashley products. *See* SOF par. 20.

The *Ashley* Complaint asserts that Ashley is the copyright holder in connection with, *inter alia*, Ashley images known as Durapella Cocoa; Roarke-Masai; Glen Eagle; Casa Mollino; Cedar Heights; and Sabrina Throws (*See* SOF par. 22), and also with respect to the Ashley HomeStores Masthead. *See* SOF par. 27. The Ashley Complaint attaches the relevant copyright applications in connection with each of these images. These copyright applications require the applicant to set forth the "Date and Nation of First Publication of This Particular Work." *See* SOF par. 23-27. Significantly, the Date of First Publication for Durapella Cocoa is March, 2007; the Date of First Publication for

Roarke-Masai is January, 2007; the Date of First Publication for Glen Eagle, Casa Mollino, Cedar Heights and Sabrina Throws is October, 2006; and the Date of First Publication for the Ashley HomeStores Masthead is January, 2007. *See* SOF par. 24-27.

Fisher Printing is insured under Wausau Commercial General Liability Policy No. YYK-Z91-443555-026 with an inception date of October 31, 2006 (the "Wausau Policy"). *See* SOF par. 38. While Wausau appears to agree that the *Ashley* Complaint otherwise falls within the "Personal and Advertising Injury Liability" Insuring Agreement of the Wausau Policy, Wausau has disclaimed coverage for the *Ashley* Complaint based on four separate Exclusions (the Knowing Violation Exclusion, the Prior Publication Exclusion, the Infringement Exclusion and the Media Insured Exclusion) to the Wausau Policy. *See* SOF par. 39-45. As Fisher Printing will demonstrate below, none of these exclusions even arguably applies to relieve Wausau of its duty to defend Fisher Printing in connection with the *Ashley* Complaint. Summary judgment should be entered in favor of Fisher Printing as to Wausau's duty to defend and (now that Fisher Printing has settled the *Ashley* Complaint) to indemnify Fisher Printing, and Fisher Printing should be awarded its attorneys' fees and costs incurred in pursuing this coverage action, under Illinois Insurance Code Section 155, due to Wausau's bad faith.

### III.    ARGUMENT

#### A.    Summary Judgment Standard

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other material show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(b). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Courts must draw inferences from the record in the light most favorable to the non-moving party. *Id.*

### B.    Illinois Duty to Defend and Insurance Policy Construction Rules

Under Illinois law, when determining the extent of coverage under a liability insurance policy, for purposes of determining the duty to defend, the Court must compare the allegations of the underlying complaint with the relevant insurance policy. *West Bend Mut. Ins. Co. v. Crichton,* 319 F. Supp. 2d 887, 888 (N.D. Ill. 2004); *Atlantic Mut. Ins. Co. v. Amer. Academy of Orthopaedic Surgeons,* 315 Ill. App. 3d 552, 248 Ill. Dec. 342, 734 N.E. 2d 50, 56 (Ill. App. 2000). If the complaint against the insured alleges facts, events or activities that are or may be covered under the insurance policy, the insurer is obligated to defend, even if the allegations are groundless, false or fraudulent. *Nautilus Ins. Co. v. VUK Builders, Inc.,* 406 F. Supp. 2d 899 (N.D. Ill. 2005); *Northbrook Prop. & Cas. Co. v. Transp. Joint Agreement,* 194 Ill. 2d 96, 251 Ill. Dec. 659, 741 N.E. 2d 253, 254 (2000).

An insurer's duty to defend and its duty to indemnify its insured are separate and distinct duties. The duty of an insurer to defend is much broader than its duty to indemnify. If the complaint alleges facts that fall within or potentially within the policy's coverage, the insurer is obligated to defend the action. *Crum and Forster Mgrs. Corp. v. Resolution Trust Corp.,* 156 Ill. 2d 384, 189 Ill. Dec. 756, 620 N.E. 2d 1073 (Ill. 1993) (citations omitted). Illinois law holds that, in construing exclusionary wording, Courts are to "construe ambiguities narrowly against the insurer and in favor of the insured." *Nautilus Ins. Co. v. VUK Builders, Inc.,* 406 F. Supp. 2d 899, 903 (N.D. Ill. 2005) (citations

omitted). Further, even if recovery in the underlying lawsuit is premised on several theories of liability, some of which are excluded from policy coverage, the insurer is still obligated to defend if even one theory falls within the policy's coverage. *Maneikis v. St. Paul Ins. Co. of Ill.*, 655 F. 2d 818, 822 (7th Cir. 1981) (citations omitted). Under Illinois law, the plaintiff's theory of recovery, or claim for relief, is not the focus in determining the liability insurer's duty to defend. Rather, it is only the allegations of the complaint which must fall within, or potentially within, covered provisions of the policy. *Lexmark Intnl., Inc. v. Transp. Ins. Co.*, 327 Ill. App. 3d 128, 761 N.E. 2d 1214 (1st Dist. 2001) (citations omitted).

Under Illinois law, terms of an insurance policy should be read according to their plain and ordinary meaning, and a Court should not search for ambiguity where there is none. *Nautilus, supra*, at 903; *Allstate Ins. Co. v. Smiley*, 276 Ill. App. 3d 971, 213 Ill. Dec. 698, 659 N.E. 2d 1345, 1350 (Ill. App. 1995). Because insurance policies are interpreted based on a reasonable person's understanding, rather than the insurer's intent, an ambiguity arises where a reasonable person in the position of the insured, reading the policy as a whole, could construe the words in several different ways. *Nautilus* and *Allstate, supra*. Upon finding an ambiguity, the Court is to construe the policy against the insurer and in favor of the insured. *Nautilus* and *Allstate, supra*; *Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F. 3d 561, 565 (7th Cir. 1998).

**C.     None of the Cited Exclusions Relieved Wausau of its Duty to Defend**

**1.     The Knowing Violation Exclusion**

The Wausau Policy does not apply to:

> "Personal and advertising injury" caused by or at the direction of the
> insured with the knowledge that the act would violate the rights of another
> *and would inflict "personal and advertising injury."*

(Emphasis supplied.) *See* SOF par. 40.

Wausau appears to take the position that this exclusion applies to relieve it of its duty to defend Fisher Printing in connection with the *Ashley* Complaint because, Wausau contends, "Ashley's counsel repeatedly contacted Fisher Printing . . . to seek Fisher Printing's termination of using Ashley marks. . . . The *Ashley* lawsuit even alleges that Fisher Printing acknowledged Ashley's position and promised to obtain written authorization before using Ashley's marks in the future." *See* SOF par. 13 and 44 and related exhibits.

Wausau's position is incorrect for numerous reasons. First, while the *Ashley* Complaint arguably permits the inference that Fisher Printing used the Ashley materials in question "with the knowledge that the act would violate the rights of" Ashley, the *Ashley* Complaint is devoid of any facts supporting the inference that Fisher Printing knew that such usage "would inflict 'personal and advertising injury'" on Ashley. After all, as the *Ashley* Complaint makes clear, Fisher Printing was not a competing furniture seller *vis-à-vis* Ashley, and arguably Fisher Printing had no reason to think that its use of the Ashley materials to "sell" Fisher Printing's printing expertise would result in any harm to Ashley.

Even more importantly, it is a perfectly permissible inference, in reading the *Ashley* Complaint, that Fisher Printing was simply ignorant of its responsibilities under trademark and copyright law, was sloppy in its business practices and thus failed to note the "warnings" being given, or believed (rightly or wrongly) that it was permitted to do

business directly with Ashley HomeStores' independent owners/operators, and utilize Ashley materials, notwithstanding the protests of Ashley Furniture. In this latter regard, in his February 24, 2006 e-mail to Ashley, Chris Fischer of Fisher Printing specifically noted that Fischer Printing was being "asked to provide design and printing services by . . . independently owned and operated Ashley Furniture Home Stores," and that "I'm sure you are aware that that not all of the Ashley Furniture Home Stores are placing print orders from your [Ashley Furniture's] program, many have secured sources out side of the program and are negotiating independently." *See* SOF par. 33. This clearly speaks to a belief on the part of Chris Fischer that Fisher Printing's marketing activities with Ashley retailers was permissible and appropriate.

Beyond this, *not even Ashley asserts that Fisher Printing acted with knowledge that its actions would harm Ashley*. In its First and Third Claims, the Ashley Complaint asserts – inconsistently – that Fisher Printing acted with full knowledge of *and in reckless disregard of* Ashley's interests. See SOF par. 28 and 30. Even more significantly, in its Second Claim, addressed to Fisher Printing's alleged violation of Ashley's rights in the Ashley HomeStores Masthead, the *Ashley* Complaint alleges that Fisher Printing acted "willfully with the full knowledge of *or in reckless disregard*" of Ashley's rights. (Emphasis supplied.) *See* SOF par. 29. Under Illinois law, allegations of "reckless disregard" are not allegations of "knowledge" for purposes of personal injury exclusions. *St. Paul Ins. Co. of Ill. V. Landau, Omahana & Kopka, Ltd.*, 246 Ill. App. 3d 852, 619 N.E. 2d 1266 (1st Dist. 1993). Further, Illinois law holds that if recovery for a claim may be had by showing either intent or a state of mind less than intent, then the potential for coverage is triggered notwithstanding intentional acts exclusions. *National Union Fire*

*Ins. Co. of Pittsburgh v. Associates in Adolescent Psychiatry*, 1987 WL 12661 (N.D. Ill. 1987). As the Court is no doubt aware, copyright and trademark infringement actions do not require intent or knowledge.

Ashley's alternative pleading of "reckless disregard" in its Second Claim is no oversight on Ashley's part – a review of the *Ashley* Complaint and its Exhibits demonstrates that Ashley never gave any "advance warning" to Fisher Printing not to utilize the Ashley HomeStores Masthead. *See generally*, SOF par. 6, 13; *See also Ashley* Complaint, attached as Exhibit B to Wausau Complaint (Baker Affidavit, Exhibit 1), paragraphs 14-16, 19, 22, 43; Exhibits A through E and G thereto. In fact, *it would have been impossible* for Ashley to give "advance warning," in 2006, to Fisher Printing not to "violate" Ashley's interests in the copyrighted images entitled Durapella Cocoa, Roarke-Masai and in the Ashley HomeStores Masthead: according to the copyright applications attached to the *Ashley* Complaint, the "Date of First Publication" of these materials *by Ashley* was not until January, 2007 for Roarke-Masai and for the Ashley HomeStores Masthead, and was not until March, 2007 for Durapella Cocoa. *See* SOF par. 24, 25, 27 and related exhibits. Thus it is a permissible inference from the *Ashley* Complaint that, as to these images, Fisher Printing used them without any knowledge that it was impinging, or even allegedly impinging, any copyright interest of Ashley.

Under clear Illinois law, if the *Ashley* Complaint alleges facts, events or activities that are or may be covered under the Wausau Policy, Wausau was obligated to defend. *Nautilus, supra*. The duty to defend is much broader than the duty to indemnify. If the *Ashley* Complaint alleges facts that fall within or potentially within the Wausau Policy's coverage, Wausau was obliged to defend. *Crum and Forster, supra*. With regard to

exclusionary wording, in particular, Courts are to "construe ambiguities narrowly against the insurer and in favor of the insured." *Nautilus, supra*. If recovery under the *Ashley* Complaint is premised on several theories of liability, some of which are excluded, the nWausau is required to defend the suit if even one theory is within coverage. *Maneikis, supra*. In the present case, as noted above, there are numerous permissible inferences available from the *Ashley* Complaint which support the inference of Fisher Printing's unknowing, unintentional violation – if indeed there even was a violation – of Ashley's copyright and trademark rights. Wausau could not properly use the Knowing Violation Exclusion to avoid its defense obligation to Fisher Printing.

### 2.     The Prior Publication Exclusion

The Wausau Policy does not apply to:

"Personal and Advertising Injury" arising out of oral or written publication
of material whose first publication took place before the beginning of the
policy period.

*See* SOF par. 40. In the present case, concededly, some of the material referred to in the *Ashley* Complaint was first published *by Ashley* prior to the October 31, 2006 inception of the policy period of the Wausau Policy. Having noted this, however, the primary focus of the *Ashley* Complaint is on redressing the alleged "wrong" done when Fisher Printing published Defendant's 2007 Advertisement and Defendant's 2007 Circulars. *See* SOF par. 6, 14-20; *See generally* the Ashley Complaint, which is Exhibit B to Wausau Complaint (Baker Affidavit, Exhibit 1). Without doubt, this publication by Fisher Printing took place *after* the October 31, 2006 inception of the Wausau Policy.

Perhaps more importantly, a significant portion of the material that is the subject of the *Ashley* Complaint was *not even first published by Ashley* until after, or nearly

contemporaneous with, the October 31, 2006 inception of the Wausau Policy. Ashley's own copyright applications show that *Ashley itself* did not "first publish" the material associated with the Durapella Cocoa application until March, 2007 – *months after the October 31, 2006 inception of the Wausau Policy.* The same holds true with respect to the Roarke-Masai and Ashley HomeStores Masthead copyright applications – with respect to both, *Ashley's own date of first publication is shown to be January, 2007*, again, months after the Wausau Policy's October 31, 2006 inception. And the copyright applications for Glen Eagle, Casa Mollino, Cedar Heights and Sabrina Throws show a date of first publication *by Ashley* of October, 2006 – contemporaneous or nearly contemporaneous with the inception of the Wausau Policy, making it very unlikely that Fisher Printing could have made any offending publication prior to the Wausau Policy's inception. *See* SOF par. 24-27.

Under Illinois law, if the *Ashley* Complaint alleges facts, events or activities that are or may be covered under the Wausau Policy, Wausau was obligated to defend. *Nautilus, supra.* The duty to defend is much broader than the duty to indemnify. If the *Ashley* Complaint alleges facts that fall within or potentially within the Wausau Policy's coverage, Wausau was obliged to defend. *Crum and Forster, supra.* With regard to exclusionary wording, in particular, Courts are to "construe ambiguities narrowly against the insurer and in favor of the insured." *Nautilus, supra.* If any portion of the allegations of the *Ashley* Complaint is within coverage, then Wausau was obligated to defend Fisher Printing. *Maneikis, supra.* Here, a significant portion of the copyrighted material for which Ashley seeks protection was not first published, *even by Ashley itself*, until well after the October 31, 2006 inception of the Wausau Policy. *Ipso facto* Fisher

Printing could not have made an offending publication of that material prior to the October 31, 2006 inception of the Wausau Policy. In the circumstances the Prior Publication Exclusion could not be used by Wausau to avoid the duty to defend.

### 3. The Infringement Exclusion

Wausau also tries, in vain, to apply the Infringement Exclusion, which obviates coverage arising out of "infringement of copyright, trademark . . . or other intellectual property rights." See SOF par. 40. Wausau, however, conveniently ignores the following exception built into the Infringement Exclusion: "However, this exclusion does not apply to infringement, *in your 'advertisement*,' of copyright, trade dress or slogan." (Emphasis supplied.) See SOF par. 40. In the present case, of course, the *Ashley* Complaint is addressed almost exclusively to alleged copyright and trademark violations stemming from the use of allegedly-protected materials *in Fisher Printing's own advertisements* – most pointedly in what the *Ashley* Complaint itself refers to as "Defendant's 2007 Advertisement," and also in what the *Ashley* Complaint refers to as "Defendant's 2007 Circulars." *See* SOF par. 14-20. In light of this, Wausau could not properly rely on the Infringement Exclusion to avoid the duty to defend.

### 3. The Media Insured Exclusion

Finally, Wausau attempts to rely on the "Media Insured Exclusion" to avoid its duty to defend. That exclusion provides that the Wausau Policy does not apply where the "personal or advertising injury" in question was "committed by an insured whose business is . . . advertising, broadcasting, publishing or telecasting." *See* SOF par. 40.

Wausau's attempt to avoid its obligation is, once again, fruitless. As its very name implies, Fisher Printing is a printing company. The *Ashley* Complaint (whose

allegations are in all events the key in determining Wausau's duty to defend) alleges that Fisher Printing "provides commercial graphic design, printing, and/or assembly services;" Wausau admits that the *Ashley* Complaint makes these allegations. *See* SOF par. 34. Nowhere does the *Ashley* Complaint allege that Fisher Printing is in the business of "advertising, broadcasting, publishing or telecasting." *See* SOF par. 35. Accordingly, the Media Insured Exclusion plainly does not provide Wausau with a basis to avoid its duty to defend.

**D.   As Wausau Breached its Duty to Defend, Fisher Printing was Entitled to Settle the *Ashley* Lawsuit on the Best Terms Reasonably Possible, and Wausau Must Pay**

Under Illinois law, an insurer's wrongful refusal to defend permits the insured to negotiate a reasonable settlement. *Maneikis v. St. Paul Ins. Co. of Ill.*, 655 F. 2d 818, 827 (7th Cir. 1981) (citations omitted). In determining the reasonableness of an insured's settlement, where the insurer has breached the duty to defend, "the litmus test must be whether, considering the totality of the circumstances, the insured's decision 'conformed to the standard of a prudent *uninsured*." *Guillen v. Potomac Alliance Ins. Co. of Ill.*, 203 Ill. 2d 141, 163, 785 N.E. 2d 1, 271 Ill. Dec. 350 (ill. 2003) (emphasis in original). "With regard to the amount of damages agreed to, the test is 'what a reasonably prudent person in the position of the [insured] would have settled for on the merits of plaintiff's claim'." *Id.*, 203 Ill. 2d at 163.

In the instant case, Fisher Printing has in fact settled the underlying litigation framed by the *Ashley* Complaint. The amount paid, and other terms of settlement, are confidential (although Wausau has been given details of the settlement with the permission of the parties to the underlying suit). Fisher Printing respectfully requests

that, after disposition of the instant summary judgment motion, the Court entertain a protective order, and take such other action as is necessary to allow Fisher Printing to prove and recover all of its incurred damages, including but not limited to its costs of defense and settlement in connection with the underlying litigation, in accordance with Illinois law.

**E.    Wausau is Liable to Fisher Printing for Insurance Bad Faith Pursuant to Section 155, Illinois Insurance Code, 215 ILCS 3/155.**

Section 155 of the Illinois Insurance Code provides, in relevant part, that:

in any action by or against a company wherein there is in issue the liability of the company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action the reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:  (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs; (b) $60,000; . . .

Under Section 155, attorneys' fees and the statutory penalty may be recovered in actions involving breach of the duty to defend, as well as in actions involving failure to indemnify.  *Matsushita Elec. Corp. of America v. Home Indem*. Co., 907 F. Supp. 1193 (N.D. Ill. 1995).

In the instant case, Wausau clearly breached its duty to defend Fisher Printing in connection with the *Ashley* Complaint.  The four exclusions cited by Wausau do not even come close to applying in light of the allegations of the *Ashley* Complaint, the wording of the Wausau Policy and well-established tenets of Illinois law.  Wausau, which is part of the Liberty Mutual Group, is one of the largest and most sophisticated insurers in the United States, and the world.    For example, Liberty Mutual Group employs nearly 39,000 people, ranks 95 on the Fortune 500 list of largest U.S. corporations and, at

December 31, 2006, had assets of $85.5 billion. *See* SOF par. 37. By the way, Fisher Printing alleged in its Counterclaim against Wausau that "Wausau is a sophisticated insurer." Wausau responded to this allegation by stating that it "does not understand what is meant by the term 'sophisticated insurer' and therefore is without information sufficient to form a belief as to the truth" of this allegation. *See* SOF par. 36.

Fisher Printing submits that Wausau's disclaimer of coverage in this instance was vexatious and unreasonable on its face, and was carried out by an insurer which ought to, and does, know better. Wausau's disclaimer is nothing more than a cynical attempt by a large insurance company to "muscle" a small, Chicago printing company whose financial wherewithal is dwarfed in comparison. It is exactly this sort of insurer misconduct that Section 155 was designed to protect against, and Fisher Printing respectfully submits that Wausau's Section 155 liability should be determined by this Court as a matter of law, on summary judgment. In the alternative, Fisher Printing respectfully requests that it be permitted to take discovery addressed to Wausau's Section 155 liability.

## IV.    CONCLUSION

For all of the foregoing reasons, defendant and counter-plaintiff Fisher Printing Co., Inc. respectfully requests that its Motion for Summary Judgment be granted.

Dated:        February 18, 2008        /s/ Robert B. .Baker
                                       Robert B. Baker
                                       **SURDYK & BAKER**
                                       225 West Washington Street, Suite 2200
                                       Chicago, Illinois 60606
                                       (312) 924-2818
                                       Facsimile: (312) 924-2867
                                       lsurdyk@sbchicago-law.com
                                       rbaker@sbchicago-law.com

**ATTORNEYS FOR FISHER PRINTING CO., INC.**

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing Memorandum in Support of Motion for Summary Judgment of Defendant and Counter-Plaintiff Fisher Printing Co., Inc. was served upon all counsel of record on the 18th day of February, 2008.

/s/Robert B. Baker