# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WAUSAU BUSINESS INSURANCE CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07 C 3732 |
| ) | |
| FISHER PRINTING CO., INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Wausau Business Insurance Company filed this suit to obtain a declaratory judgment that a commercial general liability insurance policy that it issued to Fisher Printing Company does not cover a lawsuit that Ashley Furniture Industries, Inc. filed against Fisher. Fisher counterclaimed, seeking a declaratory judgment of coverage, recovery of its losses and defense costs in the Ashley suit, and damages for bad faith denial of coverage. Both Wausau and Fisher have moved for summary judgment. For the following reasons, the Court grants Fisher's motion in part and denies Wausau's motion.

## Background

Fisher Printing is a printing and graphic services provider that primarily offers advertising support for commercial clients. Fisher's main service lines include graphic design and printing services for inserts, circulars, and other advertisements.

Fisher purchased a commercial general liability insurance policy from Wausau

for the period from October 31, 2006 through October 31, 2007. SOMF ¶ 38. The policy provided, among other things, that Wausau would "pay those sums that [Fisher] becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies" and would be obligated to defend Fisher against any suit seeking such damages. *Id.* ¶ 39.

In April 2007, Ashley filed suit against Fisher, alleging "unlawful and intentional copying of copyrighted images." Compl., Ex. B ¶1. Ashley sought damages and an injunction based on Fisher's repeated use of Ashley's protected trademarks and images. *Id.* ¶¶120A & C. Ashley alleged that in February 2006, it warned against using protected Ashley trademarks and other images but that in an April 2006 advertising circular, Fisher used the mark ASHLEY FURNITURE HOMESTORE. *Id.* ¶¶ 15 & 17. Ashley also alleged that despite further warnings, *id.* ¶19 & 22, Fisher used terms and images protected by copyright or trademark again in 2006 and 2007. *Id.* ¶¶ 21 & 24. Ashley filed suit after Fisher disseminated a circular in March 2007 in which it again allegedly used Ashley's protected images and marks. *Id.* ¶ 24; Pl. Resp. to SOMF ¶ 6.

Fisher sent Wausau a copy of the Ashley lawsuit and requested a defense under the "advertising injury" provision of its insurance policy. Wausau responded by informing Fisher that it would not provide Fisher "'with defense or indemnity' for the *Ashley* Lawsuit." SOMF ¶ 42. Wausau contended that Ashley's claims were excluded from coverage under various provisions of the policy, including the "knowing violation" and "prior publication" exclusions. *Id.* ¶ 43.

On July 3, 2007, Wausau filed the present suit, requesting a declaratory judgment that it had no duty to defend or indemnify Fisher. As noted earlier, Fisher

2

counterclaimed, seeking a declaratory judgment of coverage (Count 1), recovery of its losses and defense expenses in the Ashley suit (Count 2), and damages for bad faith denial of coverage (Count 3). Both parties have moved for summary judgment.

## Discussion

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether a genuine issue of material fact exists, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). Because the Court is presented with cross-motions for summary judgment in this case, it considers each party's motion separately and draws reasonable inferences against the party whose motion is under consideration. *See Crespo v. Unum Life Ins. Co. of Am.,* 294 F. Supp. 2d 980, 991 (N.D. Ill. 2003).

It appears to be undisputed that Ashley's claims involved "advertising injury" within the meaning of the insurance policy. Wausau argues, however, that the policy's "prior publication" exclusion applies because Fisher had started using Ashley's protected trademarks and images before the inception of its insurance policy. Wausau also argues that the policy's "knowing violation" exclusion applies because Ashley contended in the underlying suit that Fisher acted knowingly, after Ashley warned it not to use protected material in advertising circulars.

A liability insurer has a duty to defend the insured if the allegations in the

3

underlying lawsuit "fall within, or potentially fall within, the policy's coverage." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.,* 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992) (citing *U.S. Fidelity & Guaranty Co. v. Wilkin Ins. Co.,* 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (1991)). If even one of the injuries alleged in the underlying complaint falls or potentially falls within the scope of the insurance policy, the insurer must defend against the entire complaint. *Roman Catholic Diocese v. Maryland Cas. Co.,* 139 F.3d 561, 565 (7th Cir. 2001); *Maryland Cas. Co. v. Peppers,* 64 Ill.2d 187, 194, 355 N.E.2d 24, 28 (1976). In determining whether coverage exists, the Court construes the underlying complaint in favor of coverage. *U.S. Fidelity & Guaranty Co.,* 144 Ill. 2d at 73, 578 N.E.2d at 930. In addition, because the insurer's duty to defend depends on the allegations in the underlying complaint and not the actual facts, the duty arises even if the allegations lack merit. *Nautilus Ins. Co. v. Vuk Builders Inc.,* 406 F. Supp. 2d 899, 902 (N.D. Ill. 2005).

In determining whether an insurer has a duty to defend its insured, a court must construe any ambiguous terms in the insurance policy in favor of the insured. *Nautilus Ins. Co.,* 406 F. Supp. 2d at 903 (citing *Allstate Ins. Co. v. Smiley,* 276 Ill. App. 3d 971, 977, 659 N.E.2d 1345, 1350 (1995)). This same principle applies to any exclusion that the insurer invokes. *Oakley Transp. v. Zurich Ins. Co.,* 271 Ill. App. 3d 716, 721, 648 N.E.2d 1099, 1103 (1995). In addition, to obtain the benefit of an exclusion, an insurer most show that the claim "unambiguously falls within the claimed exclusion." *Nautilus Ins. Co. v. v. 1452-4 N. Milwaukee Ave., LLC*, No. 06 C 6440, 2007 WL 2230039, at *3 (N.D. Ill. Aug. 1, 2007) (citing *Hurst-Rosche Eng'rs v. Commercial Union Ins. Co.,* 51

F.3d 1336, 1342 (7th Cir. 1995)).

1. **Coverage claims**

    a. **Prior publication exclusion**

Under the insurance policy's prior publication exclusion, there is no coverage for claims "arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." SOMF ¶ 40. Wausau contends that the prior publication exclusion applies because Ashley's suit arose from "continued knowing and intentional use by Fisher Printing" of Ashley's protected marks that "began in February 2006, and that continued through the October 2006 inception of the Wausau policy and into March 2007." Pl. Resp. 9. Fisher argues that the prior publication exclusion does not apply because "a significant portion of the material that is the subject of the *Ashley* Complaint was *not even first published by Ashley* until after, or nearly contemporaneous with, the October 31, 2006 inception of the Wausau policy." Def. Mem. 11 (emphasis in original).

Both parties rely on *Taco Bell Corp. v. Continental Cas. Co.,* 388 F.3d 1069 (7th Cir. 2004). In *Taco Bell*, Zurich argued that its insurance policy did not require it to defend Taco Bell in a lawsuit alleging misappropriation of an idea. The underlying complaint arose from Taco Bell's advertising campaign using a "chihuahua with an attitude." The plaintiff in that suit alleged that Taco Bell had misappropriated an idea from an ad campaign in which the plaintiff used a "psycho chihuahua." Because a portion of Taco Bell's ad campaign began before its insurance policy took effect, Zurich contended that the policy's prior publication exclusion eliminated its duty to defend.

The court rejected Zurich's argument, stressing that "the duty to defend is

determined by what is charged in the complaint." *Id.* at 1074.  The court ruled that even though Taco Bell had used the same basic idea in different ways before and after the inception of the insurance policy, the prior publication exclusion did not apply because the underlying lawsuit charged Taco Bell with misappropriation of the ideas as separate torts, some of which occurred during the policy period.  *Id.*

As Fisher correctly points out, Ashley's complaint presents an even clearer-cut example of a claim that does not fall within the prior publication exclusion.  Ashley's description of Fisher's activity indicates the use of separate and distinct protected images without authorization, not (as in *Taco Bell*) different permutations of a general concept.  Compl., Ex. B ¶¶ 50-53.  The exhibits in Ashley's complaint also show separate copyright or trademark applications for each image that Fisher allegedly used without authorization.  *Id.*, Exs. L-U.  Rather than one continuous use of a general idea with uncertain boundaries, *see Taco Bell,* 388 F.3d at 1074, publishing copyrighted or trademarked works involves, as least as characterized in Ashley's suit against Fisher, the use of separate images with "pretty definite metes and bounds," not an ongoing use of a single general idea with uncertain boundaries.  *Id.*  If an infringer uses different copyrighted or trademarked material on separate occasions, he commits a set of "fresh wrongs" each time, and each occasion represents a separate publication, not simply a repetition of an earlier infringement.  *Id.* at 1073.

Both parties agree that Ashley's underlying complaint alleges that Fisher used distinct protected Ashley images without authorization.  Def. Resp. to SOMF ¶ 15.  Unlike in *Taco Bell*, where the misappropriation of one basic idea created "a certain vagueness" surrounding the applicability of the prior publication exclusion, Ashley's

6

complaint reflects no such vagueness. *Taco Bell,* 388 F.3d at 1073.

In short, Ashley alleged that Fisher used some of Ashley's protected images for the first time only after the inception of the insurance policy. As a result, the policy's prior publication exclusion does not apply to Ashley's suit against Fisher. So long as at least one allegation in the underlying complaint falls or potentially falls within the scope of an insurance policy, the insurer must defend its insured against the entire complaint. *Roman Catholic Diocese,* 139 F.3d at 565 (citing *Hurst-Rosche Eng'rs, Inc.,* 51 F.3d at 1342); *Maryland Cas. Co.,* 355 N.E.2d at 28.

Wausau argues that the prior publication exclusion applies because "none of the seven counts of the *Ashley* lawsuit seek recovery **only** for acts occurring subsequent to the Wausau policy inception." Pl. Resp at 9 (emphasis in original). Perhaps so, but that is of no consequence. As indicated earlier, the law does not require every allegation within a claim to fall within the scope of an insurance policy before the insurer has a duty to defend the insured.

In sum, it is undisputed that some of the images that Ashley alleged Fisher used without authorization were first published in January 2007 or later. *See* Pl. Resp. to SOMF ¶¶ 24-27. Because Ashley alleged that Fisher first published these images after the October 2006 inception of the insurance policy, Wausau cannot avoid coverage via the policy's prior publication exclusion.

### b. Knowing violation exclusion

The Ashley lawsuit also does not fall within the insurance policy's knowing violation exclusion. Under the exclusion for "Knowing Violation of Rights of Another,"

7

the policy "does not apply to . . . 'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" SOMF ¶ 40.

Wausau argues that the underlying complaint clearly alleges a knowing violation by Fisher, pointing out that the individual counts in the complaint literally say that Fisher acted "willfully and with full knowledge." Pl. Resp. at 10. The only exception is the second claim for relief, which alleges that Fisher acted with "'full knowledge of *or* with reckless disregard of' Ashley Furniture's rights." *Id.* (quoting SOMF ¶ 29) (emphasis in original).

Courts applying Illinois law have held that an exclusion for intentional conduct applies only where the underlying complaint "plainly predicate[s] liability on a theory of intentional misconduct." *Mut. Serv. Cas. Ins. Co. v. Country Life Ins. Co.,* 859 F.2d 548, 552 (7th Cir. 1988) (underlying complaint alleging a scheme by employees of insured to deprive others of compensation); *see also Conn. Indem. Co. v. DER Travel Serv., Inc.,* 328 F.3d 347, 351 (7th Cir. 2003) (denying coverage for underlying complaint that alleged employees of insured were involved in a scheme to deceive consumers).

Fisher contends that Ashley's complaint is outside the scope of the exclusion because Ashley could have recovered without proving that Fisher acted knowingly. Fisher relies on *Nat'l Union Fire Ins. Co. of Pittsburgh v. Assocs. in Adolescent Psychiatry,* No. 86 C 4959, 1987 WL 12661, at *3 (N.D. Ill. Jun. 18, 1987). In *National Union,* the plaintiff insurer claimed that an exclusion for intentional acts applied because the underlying ERISA claim alleged fraud and deceit that was "plainly within the policy's

8

exclusions for intentional acts." The court disagreed, holding that even though the underlying complaint alleged that the defendant acted intentionally, the intentional acts exclusion did not apply because an ERISA claim may be proven without showing intent. *Id.* As a result, the underlying complaint alleged facts that fell "potentially within the policy coverage." *Id*. Because an insurer must defend any claim that potentially falls within an insurance policy, the court in *National Union* held that the insurer had a duty to defend its insured. *Id.* at *3-*4. *See also Sun Elec. Corp*. *v. St. Paul Fire and Marine Ins. Co.*, No 94 C 5846, 1995 WL 6109 at *7 (N.D. Ill. May 4, 1995) ("It is the potential for coverage that allows courts to find that intentional misconduct exclusions . . . are unable to relieve an insurer from its duty to defend."); *Outboard Marine,* 154 Ill. 2d at 108, 607 N.E.2d at 1212. *See also, Sun Elec. Corp.,* 1985 WL 6109, at *7 (underlying complaint alleging copyright infringement and other related claims; exclusion similar to intentional conduct exclusion did not apply because "the plaintiff could recover without proving intent.") (citing *Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178, 1185 (7th Cir. 1985)).

For the same reasons, the knowing violation exclusion does not apply in this case. Ashley's allegations of copyright infringement could be proven without showing that Fisher acted knowingly. A complaint that alleges, but does not require, proof of intent as a predicate for liability does not "plainly predicate liability on a theory of intentional misconduct." To establish an infringement of copyright, a plaintiff needs to show only ownership of the copyright and copying of protected expression by the defendant. *See Microsoft Corp. v. V3 Solutions, Inc.,* No. 01 C 4693, 2003 WL 22038593, at *9 (N.D. Ill. Aug. 28, 2003) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv.*

9

Co., 499 U.S. 340, 361 (1991)). The plaintiff's ability to prevail does not depend on whether the defendant acted knowingly or intentionally. *Id.* ("Neither lack of knowledge nor intent are defenses to a copyright infringement claim").

The Court also notes that the second claim for relief in Ashley's complaint, which refers to reckless conduct, expressly left open the possibility that Fisher acted without knowledge. Pl. Resp. at 10. Because a court must resolve any doubts as to coverage in favor of the insured, *U.S. Fidelity & Guaranty Co.,* 144 Ill. 2d at 73, 578 N.E.2d at 930, the Court must construe the second claim for relief as not alleging that Fisher acted knowingly. For these reasons and those cited in the previous section, Fisher was entitled to a defense in Ashley's suit.

### c. Conclusion

In sum, there are no genuine issues of fact material to the coverage claims, and Fisher is entitled to judgment on those claims as a matter of law. The Court therefore denies Wausau's motion for summary judgment on the coverage claims – Wausau's claim and counts 1 and 2 of Fisher's counterclaim – and grants Fisher's cross-motion for summary judgment on those same claims (damages remain to be addressed on count 2 of the counterclaim; the judgment on that count concerns liability only).

### 2. Bad faith claim

Fisher alleges that Wausau acted in bad faith in denying coverage and pursuing this litigation. Fisher's claim requires it to prove that Wausau acted in a way that was "vexatious and unreasonable." 215 ILCS 5/155. An insurer does not act in bad faith "where a *bona fide* coverage dispute exists." *State Farm Mut. Auto. Ins. Co. v. Smith,*

197 Ill. 2d 369, 380, 757 N.E.2d 881, 887 (2001); *Matsushita Elec. Corp. of Am. v. Home Indem. Co.,* 907 F. Supp. 1193, 1200 (N.D. Ill. 1995). This holds true even if the court has found against the insurer on the coverage question, so long as the insurer advanced its coverage defense in good faith. *Morris v. Auto-Owners Ins. Co.,* 239 Ill. App. 3d 500, 509, 606 N.E.2d 1299, 1305 (1993) (statutory penalty is appropriate only when insurer's action was unreasonable as the facts appeared to a reasonable and prudent person before trial; insufficient that judgment was ultimately entered against the insurer).

Based on the present record, the Court cannot say that genuine issues of material fact are lacking with regard to the question of whether Wausau acted unreasonably. The Court therefore denies both parties' motions for summary judgment with regard to the bad faith claim asserted in Fisher's counterclaim.

**Conclusion**

For the reasons stated above, the Court grants Fisher's motion for summary judgment on Wausau's declaratory judgment claim and on Count 1 of Fisher's counterclaim; grants Fisher's motion for summary judgment as to liability on Count 2 of the counterclaim; otherwise denies Fisher's motion for summary judgment [docket no. 46]; and denies Wausau's motion for summary judgment in its entirety [docket no. 57]. The case is set for a status hearing on July 22, 2008 at 9:30 a.m. Counsel are directed to confer prior to that date so that they can address what further proceedings will be required to advance the case to disposition.

Date: July 8, 2008

_____
MATTHEW F. KENNELLY
United States District Judge